UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MITCHELL, by his conservator,
ALLEN M. GREEN,

    Plaintiff,

v.

COUNTY OF OTTAWA, OTTAWA
COUNTY SHERIFF GARY A. ROSEMA,
RUPERTO BLANCO, M.D., JANE DOE, R.N.,

    Defendants.
_____/

File No. 1:10-CV-124

HON. ROBERT HOLMES BELL

# **O P I N I O N**

This is an action under 42 U.S.C. § 1983 alleging deliberate indifference to serious medical needs and municipal liability stemming from Plaintiff Mark Mitchell's treatment while incarcerated in the Ottawa County Jail. This matter is before the Court on Defendants' motions to dismiss. (Dkt. Nos. 10, 19.) For the reasons that follow, the motion filed by Defendant Ruperto Blanco, M.D., will be denied, and the motion filed by Defendants Ottawa County and Ottawa County Sheriff Gary A. Rosema will be granted.

## I.

Defendants move for dismissal of Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief may be granted.

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard is not a "'probability requirement,'" but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

## II.

The following allegations are found in Plaintiff's amended complaint. (Dkt. No. 13, Am. Compl.) Plaintiff was incarcerated at the Ottawa County Jail from December 27, 2007, to early February 2008. (¶¶ 14-15.) From December 30 onwards, he submitted a series of kites complaining of ringing in his ear, headaches, an inability to sleep because of pain. He made request for pain medication and to see a doctor. (¶¶ 15, 18, 21, 24-29.) On December 31, Dr. Blanco reported that Plaintiff was suffering from an ear infection. (¶ 17.) On

January 4, Plaintiff's family noted that Plaintiff's eye appeared swollen and black. (¶ 22.) Allen Green, Plaintiff's brother and guardian/conservator, relayed his concerns regarding Plaintiff's health status to Defendant Jane Doe, R.N. (¶¶ 22, 23.) On January 14, Dr. Blanco reported that Plaintiff still had an ear infection with moderate to severe discharge. (¶ 30.) On January 21, Plaintiff's family observed that Plaintiff had visible pus in his ear and a swollen jaw, and Plaintiff advised that he had ear and head pain radiating into his neck and shoulder area. (¶ 31.) On January 22, Green faxed a letter to Defendant Sheriff Rosema, expressing his concerns about Plaintiff's medical attention and requesting that Plaintiff be immediately hospitalized. (¶ 33.) On January 24, Green called Defendant Jane Doe, R.N., who reported that Plaintiff was given antibiotic ear drops, oral antibiotics for infection, and Flexeral and Ibuprofen for pain, which she said was standard treatment for Plaintiff's diagnosis. (¶ 34.) On January 24, Dr. Blanco reported that Plaintiff's ear canal was full of yellowish discharge with redness and swelling. (¶ 35.)

Between January 28 and February 6, Plaintiff continued to submit kites requesting pain medication. (¶¶ 36-40.) At 4:00 a.m. on February 7, after Plaintiff complained that he had an ear-ache and showed deputies a tissue with blood on it, deputies contacted a nurse, who advised that Plaintiff would be fine until the morning nursing staff arrived. (¶ 41.) At 2:15 p.m., Dr. Blanco noted that Plaintiff's ear infection had lasted for more than five weeks and that he had copious yellow drainage. (¶ 42.) On February 8, Nurse Doe advised Green that Plaintiff was not responding to antibiotics and that he would be taken to see an ear

3

specialist in one week. (¶ 44.) At 10:00 p.m. Plaintiff was acting "groggy" and "not with it," and was moved to a solitary cell for monitoring. (¶¶ 46-48.) On February 9, 2008, at 1:30 a.m., Plaintiff had a seizure and was taken to North Ottawa Community Hospital. (¶¶ 49-50.) Plaintiff was gravely ill, unconscious, had a temperature of 103.8 and blood sugar of 600. (¶ 50.) Plaintiff was diagnosed with pneumonia, meningitis, mastoiditis, respiratory failure, diabetic ketoacidosis, diabetes mellitus, hypertension, dyslipidemia, elevated liver transaminases, dehydration, deconditioning, malnutrition, and oral candidiasis. (¶ 52.)

Physicians struggled to save Plaintiff's life. (¶¶ 53-57.) Plaintiff was hospitalized from February 9 to March 28, when he was discharged to 24-hour nursing care. (¶ 59.) Plaintiff suffered severe cognitive defects secondary to meningitis. (¶ 60.) He has been diagnosed with traumatic brain injury with greatly reduced cognitive powers, and his prognosis has been described as unpredictable, with poor chances of recovery. (¶ 61.) Since his discharge from the nursing home, Plaintiff has required supervisory care by his family and his guardian/conservator. (¶ 62.)

Plaintiff has alleged two § 1983 claims. In Count I Plaintiff claims deliberate indifference to his serious medical needs in violation of the Eighth Amendment. In Count II Plaintiff claims municipal liability.

## III.

In support of his motion to dismiss Count I, Dr. Blanco contends that Plaintiff has failed to state a claim against him for deliberate indifference to serious medical needs in

violation of the Eighth Amendment because Plaintiff has not alleged that Dr. Blanco acted with a sufficiently culpable state of mind.[1] Although Sheriff Rosema has also moved for dismissal of Count I, Plaintiff clarified at oral argument that he did not intend to include the Sheriff or the County within the scope of the deliberate indifference claim in Count I. Plaintiff only intended to bring a municipal liability claim against the Sheriff and the County. Accordingly, the Court will consider the deliberate indifference claim only as it pertains to Dr. Blanco.

"Deliberate indifference to a prisoner's serious illness or injury constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment and, therefore, states a cause of action under § 1983." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). A deliberate indifference claim based on the denial of medical care has an objective and a subjective component: the objective component requires the existence of a "sufficiently serious" medical need, and the subjective component requires that prison officials have "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating acknowledgment or one that is so obvious that even a lay person

---

[1] Dr. Blanco's motion was also filed on behalf of Defendant Catherine Hoffman, R.N., who was subsequently dismissed on stipulation of the parties. (Dkt. No. 22.) Because Dr. Blanco's motion was filed before Plaintiff filed his amended complaint, his motion does not address Defendant Jane Doe, R.N., who was first named in the amended complaint.

5

would easily recognize the necessity for a doctor's attention.'" *Id.* at 897. To satisfy the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In order to meet the pleading requirements for the subjective component, a plaintiff is required to "'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Phillips v. Roane County*, 534 F.3d 531, 540 (6th Cir. 2008) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Dr. Blanco contends that Plaintiff has failed to state a claim against him because Plaintiff has acknowledged in his complaint that he was seen by Dr. Blanco and a nurse on multiple occasions, that he was diagnosed with an ear infection, that he was provided antibiotics and pain medication, and that Dr. Blanco had set in motion a referral to an ENT specialist. In light of these admissions, Dr. Blanco contends that Plaintiff has stated, at best, an action for negligence in diagnosing or treating a medical condition, which is not sufficient to support an Eighth Amendment claim.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[T]he standard is not whether

there is something easy that the doctors, with the benefit of hindsight, could have done. It is whether they knew of and disregarded an excessive risk to inmate health or safety." *Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (quotations and alterations omitted). Accordingly, when a complaint alleges inadequate treatment as opposed to a failure to treat, courts are generally reluctant to second-guess the medical officials. *See Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir.1995); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.").

Although allegations of negligent medical care are not sufficient to state an Eighth Amendment claim, a doctor's provision of "grossly inadequate medical care" may amount to deliberate indifference. *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005). "Grossly inadequate medical care is medical care that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002)). "'When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Id.* (quoting *Terrance*, 286 F.3d at 843). When the need for treatment is obvious, delay in treatment may also amount to deliberate indifference. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009) (holding that deliberate indifference was shown where a nurse allowed the prisoner

7

to remain in his non-air-conditioned cube until her regularly scheduled medication run despite the apparent severity of his symptoms of heat exhaustion or heat stroke ). "To ascertain whether a medical care provider rendered grossly inadequate medical care to a detainee, a court must undertake a 'particularized, fact-specific inquiry.'" *Id.* (quoting *Terrance*, 286 F.3d at 844). Even under the "grossly inadequate care" standard, the plaintiff "must still present evidence of a prison official's subjective awareness of, and disregard for, a prisoner's serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006).

Plaintiff has alleged that his health and well-being deteriorated during the course of his six to seven week stay in the Ottawa County Jail, that the deterioration was obvious to the casual observer, and that Dr. Blanco "with malice, recklessness and/or deliberate indifference" failed to provide Plaintiff with appropriate care, including "a CAT-scan, X-rays, MRIs, an ENT consultation, monitoring and/or hospitalization," which were necessary to avoid meningitis, pneumonia, streptococcus, dehydration and malnutrition. (Compl. ¶¶ 68-73.) Plaintiff's allegations of deliberate indifference are somewhat conclusory in nature. Plaintiff has not affirmatively alleged that Dr. Blanco knew that his failure to provide more aggressive care created a substantial risk of serious harm to Plaintiff. Nevertheless, construing Plaintiff's amended complaint as a whole, in the light most favorable to Plaintiff, and accepting all factual allegations as true, the Court is satisfied that Plaintiff's allegations that Dr. Blanco's delay in providing alternative treatment despite his knowledge that

8

Plaintiff's condition was not responding to the antibiotics he was prescribing, are sufficient to state a plausible claim of deliberate indifference. Accordingly, Dr. Blanco's motion to dismiss Count I will be denied. The parties are reminded, however, that this opinion is directed only to the sufficiency of the complaint. It does not address the merits of Plaintiff's claim against Dr. Blanco, nor does it preclude a subsequent motion testing the sufficiency of Plaintiff's evidence. *See Stemler v. Florence*, 350 F.3d 578, 590 (6th Cir. 2003) (noting that denial of a motion to dismiss for failure to state a claim does not preclude a later summary judgment motion arguing that the plaintiff cannot in fact present evidence to support the claim).

## IV.

Although Dr. Blanco also moves for dismissal for failure to exhaust administrative remedies, the only administrative remedies he has identified are MDOC regulations. Dr. Blanco has neither argued nor shown that the MDOC regulations apply to inmates at the Ottawa County Jail. The Court accordingly denies Dr. Blanco's motion to dismiss for failure to exhaust administrative remedies.

## V.

In Count II Plaintiff alleges that Defendants Ottawa County, Sheriff Rosema, and Dr. Blanco are liable for policies and training that proximately resulted in the violation of his constitutional rights.

9

Defendants contend that Plaintiff has failed to state a claim of municipal liability because the municipality cannot be held liable under a claim of respondeat superior, and Plaintiff has not identified a policy or custom that was the moving force behind the constitutional violation.

A municipality is not subject to liability pursuant to § 1983 on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

Plaintiff alleges in his amended complaint that Defendants were responsible for developing, implementing, enforcing and maintaining policies, practices, and procedures, and for training, supervision and discipline of Defendants. (Am. Compl. ¶ 77.) Plaintiff further alleges that Defendants' policies, practices, and procedures resulted in the violations of Plaintiff's constitutional rights. (*Id.* at ¶ 78.) Plaintiff has not identified the policy or custom that caused him injury. Plaintiff simply contends that the existence of a policy, pattern, practice or a failure to train can reasonably be inferred from the allegations pled because Defendants did nothing despite their knowledge that Plaintiff's health was deteriorating.

Plaintiff's allegations are not sufficient to state a claim for municipal liability. In *Monell* and subsequent cases, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that

caused the plaintiff's injury." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "A plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). There is nothing in Plaintiff's amended complaint that even remotely identifies a policy or custom. Plaintiff's allegations against the municipality are legal conclusions rather than factual allegations. Plaintiff speculates that he was injured as a result of a policy, pattern, practice, or a failure to train, but he has not alleged sufficient facts to put the County or the Sheriff on notice as to the substance of his municipal liability claim.

In his brief in response to Defendants' motion to dismiss, Plaintiff has asserted that since the filing of his complaint, he has become aware of other inmates who have been denied appropriate medical attention at the Ottawa County Jail. Specifically, Plaintiff refers to *Modd v. Ottawa County*, No. 1:10-CV-337 (W.D. Mich.) (Bell, J.), where the plaintiff alleged that he knew of a dozen inmates who complained of being denied appropriate medical attention in the Ottawa County Jail. Plaintiff contends that with discovery, more evidence of a policy or custom may come to light. Plaintiff asserted at oral argument that if he were granted leave to amend his complaint he would add allegations from *Modd*.

Leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Leave to amend may properly be denied, however, where amendment would be futile. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001). "A proposed

amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

Even if Plaintiff were to amend his complaint to add a reference to the complaints described in *Modd*, the amendment would be futile. *Modd* alleged municipal liability based upon the Ottawa County Jail's policy or custom of denying medications which had been prescribed prior to the inmates' incarceration and its failure to maintain policies and procedures for the continuation of prescribed medication and other treatment upon incarceration. (*Modd*, No. 1:10-CV-337, Dkt. No. 24, Am. Compl. ¶¶ 67-69.) The policy and/or custom at issue in *Modd* has no bearing on Plaintiff's allegations in this case, which focus on Defendants' alleged failure to appropriately treat an inmate's deteriorating medical condition.

Plaintiff has failed to state a claim for municipal liability. Accordingly, Defendants' motion to dismiss Count II of Plaintiff's complaint will be granted, and Plaintiff's claims against Defendants Ottawa County and Sheriff Rosema will be dismissed.

An order consistent with this opinion will be entered.


Dated: August 30, 2010                    /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE